In the Matter of the Application of PHILIP DIMENTSTEIN, Petitioner.

MAX H. FRANKLE, Respondent.

Supreme Court, Special Term, Kings County, September 12, 1938.

*Julius Hollander* for petitioner.

*Max H. Frankle,* respondent in person.

Lockwood, J. This proceeding relates to the nomination in the American Labor Party primaries for State Senator from the Fourth Senate District of Kings County, made up of the Second, Ninth and Sixteenth Assembly Districts, large voting units in which the American Labor Party has a big enrollment.

Two persons are seeking the American Labor Party nomination; the present incumbent, an enrolled Democrat unopposed for renomination in the primaries of his own party, and an entrant in the American Labor Party primary with the endorsement of its committee; and Max H. Frankle, a State committeeman and an enrolled member within the district of the American Labor Party.

The petition filed by Max H. Frankle is objected to by Philip Dimentstein, an enrolled Democrat and a resident of the Senate district.

Max H. Frankle made a preliminary motion to dismiss this proceeding on the ground that under section 142 and subdivision 2 of section 330 of the Election Law, the objections must be made by a candidate aggrieved, or an enrolled member of the American Labor Party residing within the district. Therefore, the objector Philip Dimentstein, being an enrolled Democrat residing within the district, is in no way aggrieved or interested and is not qualified to challenge the validity of the designating petitions of said Frankle, here involved.

In *Matter of Brook* v. *Cohen* (169 Misc. 369, 371) Mr. Justice Miller said: " The contention that the movant, being a registered Republican and not a registered member of the American Labor Party, is not an aggrieved party, and is, therefore, not in a position to object to the designating petition here involved, is without merit. Subdivision 2 of Section 330 of the Election Law permits the institution of a proceeding relating to the nomination of a candidate, in the case of a nomination made otherwise than at a primary election, ' by a person who shall have filed objections pursuant to section one hundred and forty-two.' The present movant, having filed such objections, is in a position to maintain the instant proceeding."

Said opinion makes no reference to subdivision 1 of section 330, which provides: " The designation of any candidate or independent nomination, in a proceeding instituted by any candidate aggrieved or by a person who shall have filed objections pursuant to section one hundred and forty-two * * *.' "

Section 142 provides for the filing of written objections, but does not set forth by whom they may be filed.

In *Matter of Iserman* v. *Cohen* (149 Misc. 322), Mr. Justice Cuff, Special Term, Kings County, held that nominees in Republican primaries in the same district for the same offices were not "candidates aggrieved" within the provision of subdivision 2 of section 330 of the Election Law and had no standing to institute proceedings affecting the validity of the nominating petitions of others nominated in the same district for the same offices by the Recovery Party and in the course of his opinion, said (p. 323): "I do not think that they are the proper parties to bring on this application. From its very nature the motion should be made by a *bona fide* member of the Recovery party * * *. Petitioners are not interested in the welfare of the Recovery party, nor are they seeking to purify the nominations made by that party for the benefit of that party. As contestants against the Recovery party they should not be permitted to inject themselves into the internal affairs of that party.

"This application lacks good faith. * * * The application is denied."

If, in order to file objections, a candidate must be "aggrieved" it seems to this court that in order for an enrolled voter to file objections, he must also be "aggrieved" and the statute so implies. Concededly, the other candidate in the same primary for this nomination, could have filed objections, but he did not do so. An enrolled member of the American Labor Party within the district could have filed objections, but none were filed.

"Aggrieved" means one who is prejudiced; one having a substantial grievance; a denial of some personal or property right; and to file objections it would seem that the objector must have an interest in the subject matter. (See *Ex Parte Levitt*, 302 U. S. 633.)

In many States, voters may cross party lines and vote in any party's primaries, but in New York State, may vote only in the primary of the party in which they enrolled the previous year. Therefore, in this State, an enrolled voter would seem to have an interest only as to primaries in the party in which he or she enrolled.

The objector here, not being a candidate in, or an enrolled member of the American Labor Party, cannot be said to be prejudiced or to have any substantial interest in the primary of that party.

The court reserved decision on this motion until the end of the entire proceeding upon which hearings were held Thursday,

Friday and Saturday of the past week, in order that the entire matter might be heard by the Appellate Division at a Special Term for the hearing of appeals on election cases on Monday, September 12, 1938, at which time counsel for both sides agreed that the matter would be brought on.

This court holds that the objections made are not valid, inasmuch as they were not made by one seeking the same nomination in the same primary, or by an enrolled member of the American Labor Party residing within the district.

Among the many objections made to the Frankle petitions, are: " That many signatures on said petition are not signed by the persons purporting to have signed the same, and upon the hearing of this application, written and oral proof will be submitted."

No affidavits of registered voters were submitted, and no single voter was called as a witness. The contestant relied mostly upon a comparison by the court of signatures on the petition against the signatures on the official registration and voting record of 1937.

A handwriting expert was called in on Saturday, but his testimony was of little value.

Where names were stricken out, where signatures did not compare, it seemed generally apparent, in some cases, that a husband had signed his own name and that of his wife, or that some younger member of a family, a registered voter, had signed for him or herself, and for some of the others. There was no evidence of fraud; it seemed that these petitions had been carefully secured and that the designee had personally supervised the work.

The specifications also set forth: " That the signatures in said petitions were not secured by the subscribing witnesses whose names were thereto annexed."

No attempt was made to sustain this objection, as was successfully made in many other cases, because of the provisions of section 135 of the Election Law, as to the authentication of the petition, in which the witness must certify, among other things: " I know each of the voters whose names are subscribed to the above sheet of the foregoing petition ". (See decision of Mr. Justice Dodd, *Matter of Schwartz*, N. Y. L. J., Sept. 5, 1936, p. 610, col. 5.)

The Frankle petition requires a minimum of 750 valid signatures. It contained 968, an excess of 218.

On the hearing, there were stricken from the petition:

| | |
|---|---:|
| Duplications (signed previously for opponent) | 41 |
| Signed twice on Frankle petition | 1 |
| Not found on registration, voting or enrollment books | 70 |
| Not enrolled in American Labor Party | 27 |
| Defect in affidavit of witnesses | 17 |
| Wrong election district stated on petition | 1 |
| Signatures on petition did not check up when compared to handwriting on official voting register | 28 |
| Signed with initials only, or incorrect name, such as Francis on petition, Frank on register. Section 135, Election Law, amended 1937: " A designating petition * * * must set forth in every instance the *full name* of the signer " etc. | 17 |
| For other causes | 4 |
| Total | 206 |

Deducting these 206 names from the total of 968, leaves 762, against a minimum needed of 750.

On a number of the petition sheets, names have been crossed out, or the date of the acknowledgment changed. For example: on sheet 62, this affected 2 out of 4 names; on 71, 2 out of 10; on 85, 2 out of 6; on 92, 1 out of 10; on 104, 1 out of 10; on 112, 1 out of 3; on 124, there was a claimed erasure, total names on sheet, 10; on 125, a claimed change of date, total number of names, 10. Similar objections are made to sheets 3, 7, 38, 47, 48, 50, 86 and 99.

The names stricken out have, of course, not been counted, but the objector contends that the crossing out of any name, or word, or a change of any kind, on a sheet, voids the entire sheet and all names signed thereon. If this objector can maintain this proceeding and this objection is good, over one hundred additional names would have to be stricken out and the total reduced far below the minimum requirement.

There was no proof offered by the objector to show that the erasures or alterations were made for the purpose of fraud, nor that they were made subsequent to the time the acknowledgements were taken. On the contrary, the designee Frankle testified that all changes were made before the sheets were acknowledged. Furthermore, all the names on the sheets in question, other than those erased or crossed out, were compared and verified as to handwriting with the signatures on the official record, and found to tally. (See *Matter of Mincey,* N. Y. L. J., Sept. 2, 1937, p. 558, col. 2.)

The two questions here involved arise in many of these election law cases. No briefs were submitted, and in the short time available, the court has found only the three cases cited, which seem to apply in some respects. Therefore, it is well that both sides are anxious to promptly take the matter to the appellate court.

The application is denied.